# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JACQUELINE MOORE, | : | Case No. 3:16-cv-178 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Jacqueline Moore brings this case challenging the Social Security Administration's denial of her applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on March 12, 2017, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #7).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since November 1, 2009. She was thirty-six years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school education. *See* 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that she has bipolar disorder. (Doc. #7, *PageID* #111). "I have extreme ups and downs …. I have bouts of sleeping for a couple days at a time …. I have trouble getting my daughter off to school and I sleep all day. It's very difficult to do things that I normally would have no trouble getting done." *Id.* at 112.

Plaintiff further explained, "I wouldn't say I hear voices, but I do hear people think. … [I]t's not an actual outside audible sound." *Id.* "I'll be … in a room with somebody and I will hear them talking and I will feel a nervousness where they'll be thinking something, but their lips won't be moving." *Id.* at 113. In the past, this occurred every day but medication has "helped tremendously." *Id.*

She also experiences irritability. *Id.* at 112. However, she does not get into arguments with other people: "the irritability I keep to myself. I usually write in a journal that I keep well hidden." *Id.* at 113.

Plaintiff's doctor recently diagnosed post-traumatic stress disorder. *Id.* at 115. "He's quite sure that I've been molested as a child." *Id*. She has intrusive memories one to two times per week. *Id.* at 116.

Plaintiff had carpal tunnel and had release surgeries on both arms. *Id.* at 111. She has no ongoing effects from it. *Id*. She also has hepatitis but does not experience any symptoms. *Id*. She has some pain in her back and hip. *Id.* at 124.

Plaintiff has struggled with an addiction to alcohol. *Id.* at 116. She quit drinking in May 2013 but has had some relapses. *Id*. Prior to May 2013, she drank every day. *Id.* at 117. When she quit, she went to Alcoholics Anonymous every day for almost a year. *Id*. She explained, "I was attempting to self-medicate with alcohol … for my bipolar depression and anxiety and because of the proper medications that my doctor prescribed, I no longer need to self-medicate with alcohol …." *Id*.

Plaintiff lives with her older brother and her eleven-year-old daughter. *Id.* at 108-09. She does not have a driver's license. *Id.* at 109. She is able to do some household chores such as vacuuming and washing dishes. *Id.* at 119. Her brother helps with chores as well. *Id*. Plaintiff is able to take care of her personal needs "with difficulty." *Id.* at 118. Before she began taking medication for her mental health issues, she went long periods of time without bathing or brushing her teeth. *Id*. With medication, she still sometimes goes a week without bathing and a few days without brushing her teeth. *Id*. She estimated that in a month, she has fifteen days that she is not able to get out of bed, shower, or brush her teeth. *Id.* at 122.

Plaintiff does not leave her house very often. *Id.* at 114. She rides her bike to the library approximately once per week to collect and return DVDs. *Id.* She has one friend but they do not go anywhere or do anything. *Id.* at 115. On an ordinary day, she always gets her daughter to school and is home when she gets off the bus in the afternoon. *Id.* at 120. While her daughter is at school, Plaintiff's activities depend on how she is feeling. *Id.* Sometimes she goes back to sleep and sometimes she is able to get things done. *Id.* at 120-21.

### B. Medical Opinions

#### i. Mark A. MacNealy, D.O., J.D.

Dr. MacNealy, Plaintiff's treating psychiatrist, completed a mental impairment questionnaire on October 31, 2014. (Doc. #7, *PageID* #s 709-12). He noted that he had seen her every month for one year. *Id.* at 709. He diagnosed bipolar disorder and paranoid personality and assigned her a Global Assessment of Functioning score of thirty-five. *Id.* Dr. MacNealy identified many of her signs and symptoms, including, in part: poor memory, appetite disturbance with weight change; sleep disturbance; personality change; delusions or hallucinations; recurrent panic attacks; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; and persistent irrational fears. *Id.*

Dr. MacNealy opined that Plaintiff's prognosis is poor, and she is "unable to work at any time and within any occupation." *Id.* at 710-11. He indicated that all of Plaintiff's functional limitations are extreme. *Id.* at 711-12.

4

### ii. Warren R. Ljungren, M.D., & Susan M. Ash, C.N.P.

Dr. Ljungren and Ms. Ash completed interrogatories on June 12, 2014. *Id.* at 691-99. Ms. Ash indicated that Dr. Ljungren had not seen Plaintiff in three years, but in the last year, she saw Ms. Ash three times and saw Dr. Myers once. *Id.* at 691. They have treated her for "bipolar depression[,] alcohol substance[,] thrush[,] women's health[,] facial lacerations[,] birth control[, and] throat infection." *Id.* at 692. Plaintiff is able—"most of the time"—to be prompt and regular in attendance; respond appropriately to supervision, co-workers, and customary work pressures; withstand the pressure of meeting normal standards of work production and accuracy; sustain attention and concentration on her work to meet normal standards; understand, remember, and carry out simple work instructions without requiring very close supervision; behave in an emotionally stable manner; and demonstrate reliability. *Id.* at 693-96. She is not able to maintain concentration and attention for extended periods. *Id.* at 696. She has a slight restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. *Id.* at 699.

Ms. Ash also completed a mental impairment questionnaire and assessment of ability to do work-related activities (physical). *Id.* at 700-08. She indicated that Plaintiff was referred to a psychiatrist for mental health treatment. *Id.* at 706. And, at her last appointment, she was "much improved [and] able to carry on conversation fairly appropriately [but she was] still having some hallucinations [and] paranoia." *Id.* Ms. Ash opined that Plaintiff would likely be absent from work four times per month because

5

of her impairments and treatment. *Id.* at 707. Additionally, Plaintiff has marked difficulties in maintaining social functioning; marked deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and marked limitations in her ability to remember locations and work-like procedures and ability to understand, remember, and carry out detailed instructions. *Id*.

And, Ms. Ash opined that because of Plaintiff's history of lumbar strain, she could frequently lift and carry twenty-five pounds. *Id.* at 700. Further, she could occasionally climb, balance, stoop, crouch, kneel, crawl, and push/pull. *Id.* at 702. She concluded that Plaintiff has the residual functional ability to do light work on a sustained basis but she "still [has] hallucinations and communication is affected." *Id.* at 703-04.

### iii. Mary Ann Jones, Ph.D.

Dr. Jones evaluated Plaintiff on May 23, 2013. *Id.* at 504-12. She diagnosed bipolar disorder (depression); alcohol dependence (in 1.5-month remission); psychological factors affecting physical condition; and obsessive-compulsive disorder. *Id.* at 510. She opined, "her history of alcoholism and other psychological symptoms would likely negatively impact her ability to understand, remember, and apply instructions in a work setting consistent with [a low average range of intelligence]." *Id.* at 511. Similarly, "it is likely that her history of alcoholism and current symptoms of depression and obsessive-compulsive symptoms would negatively impact her ability to sustain reasonable attention and concentration and to maintain appropriate persistence and pace in order to perform various work tasks." *Id.* Further, "there do appear to be

6

some limitations in her ability to conform to social expectations in a work setting… [and] to cope appropriately with common workplace pressure." *Id.* at 511-12.

### iv. Kristen Haskins, Psy.D., & Aracelis Rivera, Psy.D.

Dr. Haskins reviewed Plaintiff's records on July 2, 2013. *Id.* at 135-47. She found that Plaintiff had four severe impairments: affective disorders; alcohol, substance addiction disorders; somatoform disorders; and anxiety disorders. *Id.* at 141. Additionally, she had one non-severe impairment—chronic liver disease. *Id.* Dr. Haskins opined that she has a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. *Id.* She concluded that Plaintiff was limited to one to three step tasks; superficial interaction with the public, coworkers, and supervisors; and "supervisory support during times of significant change." *Id.* at 143-45. Further, she is "limited to work in a static setting [without] the need for fast pace or strict production quotas or close sustained focus/attention. No multitasking." *Id.* at 144.

On August 28, 2013, Dr. Rivera reviewed Plaintiff's records and affirmed Dr. Haskins's findings. *Id.* at 163-76

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security

Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since November 1, 2009.

Step 2: She has the severe impairments of hepatitis C with associated alcoholic liver disease, a bipolar disorder, depression, and a history of alcohol abuse.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work … subject to the following limitations: (1) frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional contact with co-workers, supervisors,

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

9

and the public; (6) no fast paced production work or jobs involving strict production quotas; (7) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next; and (8) no occupational exposure to drugs or alcohol."

Step 4: She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 83-98). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 97.

## V. Discussion

Plaintiff contends that the ALJ failed to properly consider the medical opinions of record and failed to properly evaluate her credibility and symptom severity. She also asserts that the ALJ failed to adequately account for the moderate limitation in concentration, persistence, or pace in the hypothetical to the vocational expert. The Commissioner maintains that substantial evidence supports the ALJ's evaluation of the opinion evidence, Plaintiff's credibility, and her residual functional capacity.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported

> by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

### i. Dr. MacNealy's Opinion

ALJ Kenyon found that Dr. MacNealy's opinion was not entitled to controlling or deferential weight and, instead, assigned it little weight. (Doc. #7, *PageID* #95).

ALJ Kenyon first acknowledged that Dr. MacNealy is a mental health professional who saw Plaintiff on a monthly basis for a year. *Id.* This addresses several of the factors used to weigh medical opinions—specifically, specialization, length of treatment

relationship, and frequency of examination. *See* 20 C.F.R. § 404.1527(c). However, this constitutes error: "these factors are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)) (emphasis added).

Although the ALJ stated that Dr. MacNealy's opinion is not entitled to controlling weight, it is not clear that he addressed either condition of the treating physician rule when weighing his opinion. ALJ Kenyon did not mention the second condition—whether the opinion is not inconsistent with the record. And, it is unclear if he addressed the first—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. He merely finds that Dr. MacNealy's "opinion is unsupported by objective mental status findings." (Doc. #7, *PageID* #95). Although he could be referring to the first condition, he could also be referring to "supportability" under the factors. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

The uncertainty of whether ALJ Kenyon addressed the conditions of the treating physician rule conflicts with the requirement that the decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5. Further, by using the same standard to weigh treating physicians' opinions and other physicians' opinions, he fails to recognize the deference given to treating physicians' opinions. *Id.* at *4 ("In many cases, a treating source's

medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

However, if ALJ Kenyon was addressing the treating physician rule, his findings are not supported by substantial evidence. After concluding that Dr. MacNealy's opinion is unsupported, the ALJ observed, "His progress notes clearly do not [portray] [Plaintiff] as having the "extreme" level of limitations he later noted on this assessment form. … Dr. MacNealy documented an anxious mood and loose thought processes at the initial evaluation in October 2013, but in subsequent progress notes, he consistently documented [essentially] normal mental status examinations." (Doc. #7, *PageID* #95).

Under the treating physician rule, "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2. ALJ Kenyon failed to acknowledge that substantial evidence in the record supports Dr. MacNealy's opinion. For example, his treatment notes support his opinion. Dr. MacNealy noted in December 2013, "Only four anxiety attacks since last visit." (Doc. #7, *PageID* #744). Plaintiff's last visit was only one month before. *Id.* at 746-47. He consistently prescribed Lithium for mood stability, and in January 2014, he began prescribing Abilify, an anti-psychotic. *Id.* at 743-47. In June 2014, he added Latuda, a neuroleptic. *Id.* at 730. After giving Plaintiff the MINI International Interview, Dr. MacNealy determined Plaintiff meets the diagnostic criteria for Post-Traumatic Stress Disorder. *Id.* at 772. Together, his notes reveal that Plaintiff's ongoing struggle with mental health issues.

Treatment notes from Beavercreek Family Medicine further support Dr. MacNealy's opinion. In June 2013, Ms. Ash noted, "She stopped all her medication because she was feeling paranoid and unsure of taking even the lactulose. She stated that she is also having some hallucinations such as cracks in the side walk are red and [she is] unsure of some of the things she hears from the TV. She is even not trusting her family members …." *Id.* at 763. Ms. Ash noted in July 2013 that Plaintiff was beginning to understand that "part of the issues that she is having is due to hearing [her mother and brother] speak when they are actually not speaking 'almost like telepathy.'" *Id.* at 760. In April 2014, Plaintiff had "noted remarkable improvements." *Id.* at 755. However, Plaintiff admitted she still has "bouts of hallucinations or delusions." *Id.*

Dr. Jones's evaluation of Plaintiff also supports Dr. MacNealy's opinion. She found that Plaintiff's history of alcoholism along with her symptoms of depression and obsessive-compulsive disorder would negatively impact her ability to understand, remember, and apply instructions in a work setting; to sustain reasonable attention and concentration; and to maintain appropriate persistence and pace in order to perform various work tasks. *Id.* at 511. Further, Dr. Jones opined that she had some limitations in her ability to conform to social expectations in a work setting and to cope appropriately with common workplace pressure. *Id.* at 511-12.

Significantly, the ALJ's analysis ignores the realities of mental illness. It can be considerably more difficult to substantiate psychiatric impairments by objective laboratory testing:

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121 (6th Cir. 1989) (citing *Poulin v. Bowen,* 817 F.2d 865, 873-74 (D.C. Cir. 1987), quoting *Lebus v. Harris,* F.Supp. 56, 60 (N.D. Cal. 1981)). In the present case, there are no reasons to question Dr. MacNealy's diagnostic techniques.

The one reason for rejecting Dr. MacNealy's opinion provided by the ALJ does not amount to "good reasons." "The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule…." *Gayheart,* 710 F.3d at 377.

Therefore, the ALJ's finding that Dr. MacNealy's opinion is entitled to "little weight" is not supported by substantial evidence.

### ii. Dr. Haskins & Dr. Rivera's Opinion

In contrast to the "little weight" the ALJ assigned Plaintiff's treating psychiatrist and consulting psychologist, he concluded that the opinions of State agency reviewing psychologists, Dr. Haskins and Dr. Rivera, were entitled to "great weight" because "their assessments are supported by objective signs and findings in the preponderance of the record." (Doc. #7, *PageID* #93). He further noted, "As discussed above, [Plaintiff] has responded well to mental health treatment. Even when considering her history of alcohol

15

abuse, which is now in reported remission, the claimant experiences no more than moderate work-related mental limitations." *Id.* at 93.

The ALJ's explanation for the weight he assigned only addresses one factor—supportability. This constitutes error: "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…." 20 C.F.R. § 404.1527(e)(2)(ii). In addition, the ALJ erred by failing to apply the same level of scrutiny to reviewing psychologists' opinions as he applied to treating source's opinion. *See Gayheart,* 710 F.3d at 379 (citing 20 C.F.R. § 404.1527(c); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996)) ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires."). The ALJ criticizes Dr. Jones's opinion because she only saw Plaintiff once. (Doc. #7, *PageID* #94). However, the ALJ fails to mention that Dr. Haskins and Dr. Rivera never met with Plaintiff, and they evaluated Plaintiff's records *before* any of her treating doctors submitted their opinions.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal

criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Jacqueline Moore was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date:  August 2, 2017                         *s/Sharon L. Ovington*
                                              Sharon L. Ovington
                                              United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).